T.C. Summary Opinion 2009-76

UNITED STATES TAX COURT

THOMAS R. TAVELLA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11463-07S.                    Filed May 14, 2009.

Thomas R. Tavella, pro se.

<u>Alexander D. Devitis</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $9,922 for 2004. The issue for decision is whether petitioner is subject to self-employment tax.

## Background

Some of the facts and one of the issues has been stipulated. The stipulated facts and issue are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in California.

During 2004 petitioner worked as a "consultant" and independent contractor for the sole proprietorship of Mark H. Randall (Mr. Randall), who was doing business as "The Mark Randall Company" (Mark Randall). Petitioner entered into an oral contract "sealed with a handshake" with Mr. Randall to "work together and build his business and make it successful." Petitioner has worked exclusively for Mark Randall since 1994. Petitioner described his work with Mark Randall as "collaborative", but petitioner does not handle any account completely on his own.

Petitioner used the title "President" of Mark Randall because it conveyed to clients his importance to the business of Mark Randall. Petitioner, however, maintained no ownership interest in and had no executive responsibility for Mark Randall. As Mark Randall had no offices, petitioner maintained a home

office for his work. Any travel required for petitioner's work was usually on weekends; he usually called on his clients on Sunday.

Typically, petitioner consulted with synagogues in fundraising matters. He conducted interviews from his home with members of the client congregations to determine their feelings about their synagogue and whether they would be willing to increase their donations. Petitioner might also conduct meetings with volunteer congregants to help them solicit funds. Mark Randall paid petitioner a fixed rate per month per client until either the contract between Mark Randall and the client ended or the fee to the client was reduced.

Petitioner included a Schedule C, Profit or Loss From Business, with his Federal income tax return for 2004, stating his business or profession as consultant. Petitioner, however, did not report any self-employment tax. Respondent examined petitioner's return and determined that petitioner owes self-employment tax on his income from Mark Randall. As a result of the adjustment to self-employment tax respondent made other computational adjustments that will be resolved by the Court's decision on the self-employment tax issue.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden

of proving that those determinations are erroneous.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  Because there is no dispute as to any factual issue in this case, section 7491(a) is inapplicable.

<u>"Statutory Employee"</u>

Petitioner argues that he is a so-called statutory employee and therefore is not subject to self-employment taxes. Generally, the tax on self-employment income applies to the "net earnings from self-employment" of an individual.  Secs. 1401, 1402(b).  In simplified terms, net earnings from self employment means the "gross income derived by an individual from any trade or business carried on by such individual," less the deductions attributable to the trade or business.  Sec. 1402(a).  The term "trade or business" generally does not include the performance of services by an individual as an employee.  Sec. 1402(c)(2).  The term "employee" for employment tax purposes has the same meaning as in section 3121(d).  Sec. 1402(d).

An employee for employment tax purposes is defined in pertinent part by section 3121(d) as follows:

> SEC. 3121(d).  Employee.--For purposes of this chapter, the term "employee" means-
>
> > (1) any officer of a corporation; or

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or

(3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person * * *

as an agent or commission driver who distributes certain food products, as a life insurance salesman, as a home worker working on certain materials or goods, or as a traveling or city salesman, who is not an agent or commission driver, who meets certain other requirements. The listed individuals, if the contract of service contemplates that substantially all of such services are to be performed personally by such individual, will be classified as employees except that an individual will not be included in the term "employee" if he has a substantial investment in facilities used in connection with the performance of the services (other than in facilities for transportation). Sec. 3121(d).

The Social Security Act Amendments of 1950 "restyled the predecessor" of section 3121(d) and extended coverage to specified classes of workers "irrespective of their common-law status." See United States v. W.M. Webb, Inc., 397 U.S. 179, 186 n. 12 (1970). According to S. Rept. 1669, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 302, 346-347, the definition of "employee" was to be expanded to include individuals performing

"certain categories of service which are subject to clear-cut definition," and if "the services are not performed in one of the designated occupational groups," the paragraph is inapplicable with respect to such services.

Petitioner takes the position that his work was similar to that of life insurance agents and that he competed with them for clients. According to petitioner: "it is reasonable to assume that the list of jobs was meant to be examples of and not a finite list to the exclusion of all others who may work in the same manner." Section 3121(d), however, does not provide that the term "employee" includes the occupations on the list. It defines the term "employee" and lists discrete and specific categories of service that are not so ambiguous as to allow petitioner in his service profession, to fit the definition of "statutory employee" as prescribed by that section. The legislative history clearly states the intention of Congress to exclude from the definition of "employee" individuals performing services that "are not performed in one of the designated occupational groups".

If the statute does not include him, petitioner counters by arguing that since he competes with life insurance salesmen, allowing them to be classified as statutory employees while denying him the same classification is unfair and violates his right of equal protection.

Under equal protection analysis, a classification in a Federal statute is subject to strict scrutiny only if it "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 16-17 (1973). Neither of these circumstances applies here. Consequently, the rational basis standard is the appropriate one to apply. Under the standard, where a rational basis exists for divergent treatment of different classes of persons under a tax statute, the statute is not in violation of the Fifth Amendment because of the divergent treatment. Regan v. Taxation With Representation, 461 U.S. 540 (1983); United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4 (1970). Generally, under this standard, a differentiation in treatment is not violative of equal protection principles if any state of facts rationally justifying it is demonstrated to or perceived by the courts. United States v. Maryland Savings-Share Ins. Corp., supra at 6. The Supreme Court has stated that "the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Madden

v. Commonwealth of Kentucky, 309 U.S. 83, 88 (1940).  The presumption of the existence of a rational basis for a classification in a revenue statute is particularly strong. Black v. Commissioner, 69 T.C. 505, 507-508 (1977); Nammack v. Commissioner, 56 T.C. 1379, 1385 (1971), affd. per curiam 459 F.2d 1045 (2d Cir. 1972).

The Supreme Court, in United States v. W.M. Webb, Inc., supra at 186, suggests that Congress intended by the statutory revision to limit those occupations that might be considered to be filled by employees.

Petitioner has not shown that Congress did not rationally decide to include individuals in specific service professions in the category of "employee" regardless of the common law rules for determining the employer-employee relationship and to exclude others.  The Court finds that the legislative classification is constitutional.

Petitioner, therefore, cannot be a "statutory" employee under section 3121(d)(3).  It follows that petitioner had income from self-employment and is liable for self-employment tax for 2004.  See secs. 1401 and 1402.

To reflect the foregoing,

Decision will be entered

for respondent.